RODIGER v. THADDEUS DAVIDS MFG. CO.

(Circuit Court, S. D. New York. January 11, 1904.)

**1. PATENTS—INVENTION—PASTE CUP.**

The Rodiger patent, No. 649,864, for a paste cup or mucilage holder, consisting of a cylindrical cup having a partition integral with the walls, dividing it into two compartments side by side, one for the material and one for water and the brush, with a cover extending above the top sufficiently to inclose the handle of the brush, and to permit the evaporation of the water to moisten the mucilage, is merely a combination of old devices, each performing an old function, and working out its own effect without producing anything novel as the result of the combination, and is void for lack of patentable invention.

In Equity. Suit for infringement of letters patent No. 649,864 for an improvement in paste cups, granted to William Rodiger, May 15, 1900. On final hearing.

Frank T. Brown, for complainant.

W. P. Preble, Jr., for defendant.

RAY, District Judge. May 15, 1900, letters patent No. 649,864 were issued to the complainant, being for an alleged new and useful improvement in paste cups. The claims of the patent are as follows:

"(1) A paste cup or mucilage holder provided with a brush chamber composed of a portion of the wall of the cup and an interior partition integral with and meeting such wall at its ends, in combination with a cover extending above the cup a sufficient distance to inclose the handle of the brush, which projects above the cup, and being of a diameter practically the same as the diameter of the cup, substantially as and for the purpose set forth.

"(2) A paste cup or mucilage holder, comprising a cylindrical chamber, and having a partition wall arranged in said chamber and to one side of the geometric center thereof, to form a receptacle for the brush, said partition being formed integrally with the walls of said cylindrical chamber, as and for the purpose set forth.

"(3) A paste cup or mucilage holder, comprising a chamber having a partition wall formed integrally with the walls of said chamber, and arranged within and to one side of the center of said chamber, to form a receptacle for the brush, the upper edges of said chamber and partition wall being flush with each other, the handle of the brush adapted to extend above said top edges, in combination with a cover for said chamber, said cover extending above the top edge thereof to inclose the handle of the brush, as and for the purpose set forth."

April 9, 1901, letters patent No. 671,927 were issued to John B. Davids, assignor to defendant, Thaddeus Davids Manufacturing Company, being for a new and useful improvement in paste jars. The claims of this patent are as follows:

"(1) A paste jar having two compartments, each occupying the space between a separating partition and a side of the jar, and having a screw-threaded rim, a, in combination with a cover having a correspondingly screw-threaded lip, D', d, an annular fair surface, D³, sunk as shown, to form a recess for annular packing, and also press firmly on a removable cup, and a capacious dome, D⁴, adapted to serve with a removable cup and a brush, substantially as herein specified.

"(2) A paste jar having two compartments, each occupying the space between a separating partition and a side of the jar, and having a screw-threaded rim, a, in combination with a cover having a correspondingly screw-

threaded lip, D', d, an annular fair surface, D³, and a capacious central top, D⁴, and with a removable cup, B, having a flange, B', arranged to extend over the said partition, and to serve therewith and with a brush, substantially as herein specified.

"(3) A paste jar having two compartments, each occupying the space between a separating partition and a side of the jar, and having a screw-threaded rim, a, in combination with a cover having a correspondingly screw-threaded lip, D', d, an annular fair surface, D³, and a capacious central top, D⁴, and with a removable cup, B, having a flange, B', arranged to extend over the said partition, and an upward extension or ear, B², adapted to serve the double function of a handle for the cup when it is to be raised and a means for holding the cup firmly when the jar is closed, all substantially as herein specified.

"(4) A paste jar having two compartments, each occupying the space between a separating partition and a side of the jar, and having a screw-threaded rim, a, in combination with a cover having a corresponding screw-threaded lip, D', an annular fair surface, D³, and a capacious central top, and with a removable cup, B, having a flange, B', arranged to extend over the said partition, and with a brush, E, and lugs, B³, B³, on said flange, serving as scrapers in removing surplus paste from said brush, all substantially as and for the purposes herein specified."

Paste cups and paste jars are one and the same thing, and are used for the same purpose.

The complainant alleges that the paste jars or paste cups manufactured and sold by the defendant in accordance with its patent plainly infringe the cup or jar made and authorized by his letters patent. This court is decidedly of the opinion that this claim is true, and that the only real question is the validity of the complainant's patent.

(1) Do such letters patent disclose invention? And (2) are they void for anticipation?

Each cup or jar is cylindrical in form, may be made of glass or any other suitable material, is intended to hold paste or mucilage, has a compartment for paste or mucilage and another for water and the brush, formed by a partition to one side of the center of the pot or jar, and also a top covering, the whole of sufficient height to allow the brush to stand erect in the water compartment. In each the cover is attached to the jar by a screw thread, but may be attached in any other suitable manner. In complainant's cup or jar the division is shown in the drawings to be formed by a straight partition, while in defendant's the partition is curved. In each patent the partition forms an integral part of the cup or pot, and arises from the inner bottom surface, and extends upwardly until the top is practically flush with the top surface of the cup. In defendant's patent this brush and water chamber is made so as to receive a removeable cup, which fits into it, and if in place would hold the water and brush. If removed, the chamber itself would receive and hold the water and brush in the same manner as does the complainant's patent. This removable cup may be lifted out of this compartment, and filled or emptied, and then replaced. Hence in defendant's pot or jar the water and brush compartment may be emptied or replenished without lifting or tipping the pot or jar itself, while in complainant's the whole pot or jar must be lifted or tipped in order to empty it of water. This addition may be an improvement on the complainant's device, but is in no way essential to its utility, except in the respect mentioned. Remove and dis-

126 F.—61

card this brush and water cup, and we have left the complainant's device in every essential particular, with the shape of the partition and the top or cover of the cup somewhat changed, but not in any way that adds either to the beauty, cheapness, novelty, or utility of the device. In defendant's patent each and every element of complainant's patent is present, and we have added a removable water and brush cup within the water and brush compartment formed by the partition.

It may be that defendant is entitled to a patent for this addition of a removable cup within the brush and water compartment, but such an addition, having no other use or function than that mentioned, cannot obviate or defeat the charge of infringement. Defendant does not leave out of its construction one element of complainant's, or substitute a new element, but merely adds something which may be removed without affecting, substantially, the efficiency and utility of the device. Defendant's patent is not for the addition or improvement, but for his pot as a whole. It is clear that defendant cannot appropriate complainant's device, if a valid patent, in this way. He may, if novel and amounting to invention, have a patent for his improvement, the addition, but not for the pot as a whole, and if he makes or vends the same he infringes complainant's patent, if valid.

We come then to consider the validity of the complainant's patent. The court finds that every idea, element, and claim of the complainant's device is old, has been in use and patented by others before the complainant's patent was applied for or granted, but no patent, so far as appears, for the whole combination was ever before granted. A cylindrical paste or mucilage cup, with an integral partition forming a compartment for the material and another for the water and brush, with a cover having a raised or an elevated part to receive the brush handle, the brush standing erect in the water compartment, is old. See Redington Patent, No. 625,517, dated May 23, 1899. In this patent the water and brush compartment rises from the bottom of the cup until its top is flush with the sides of the main structure, but such water compartment is cylindrical in form, and located in the center of the pot or jar, and entirely surrounded by the paste or other material. The top or cover screws on, but is not raised above this material, except at the water compartment, where it is elevated to receive the handle of the brush. Hence the evaporated water does not reach and moisten the paste, mucilage, or other material in the adjoining compartment. The complainant's patent moves the water compartment to one side of the jar, and also elevates the whole cover, so that the material may be kept moist by the evaporation of the water. But in the P. Weiss patent, No. 315,195, dated April 7, 1885, we have a paste holder, oblong it is true, with two compartments, one for the water and brush and the other for the material, the water chamber being at one end, while in the C. R. Carley patent, No. 340,859, dated April 27, 1886, we have a paint or varnish pail, equally useful as a mucilage or paste pot or jar, with a compartment for the material and brush and another for the water, the latter partly, and it might be wholly, under an elevated cover to receive the handle of the brush, and also permitting the evaporated moisture to reach, mingle with, and moisten the material. Of course the construction is different, but the

ideas are all present, except that the brush is suspended in the material chamber instead of being placed in the water chamber. In the Carley patent nothing is said as to the escape of moisture by evaporation into the chamber containing the brush and material. But, as seen, this latter idea is old. The elevated or dome cover, extending the entire circumference of the cup or pot, is illustrated in the Wilmot Patent, No. 478,831, dated July 12, 1892, also in the Woolf's mucilage stands. See page 21, Bainbridge Discount Sheet 1892. By combining the elements of the Redington patent with one of those of the Weiss patent, and the elevated cover of the Carley and Wilmot patents, and varying the form of construction and the shape of the completed structure, the complainant has produced his patented cup or jar, and the only new result obtained over that produced by Redington is that the evaporation is permitted to escape into the compartment occupied by the paste, and so it is claimed, keep the paste moist. This idea, however, is old, and did not seem to occur to the inventor, Rodiger, as nothing is said regarding it in his specifications. This fact is, however, immaterial, as the complainant is entitled to all the new and useful results produced, if any, whether mentioned or not.

A patent is valid if by a new combination of old elements a new and useful or beneficial result has been obtained. This may amount to invention. But what new and useful result has been obtained or produced?

The complainant contends that having the partition forming the water compartment to one side is an advantage in that it saves weight in the cup, prevents water getting on the paste when this receptacle is emptied, admits of the use of a wider brush, and also economizes space by reducing that occupied by the partition walls. These items relate to forms of construction and convenience which would naturally occur to almost any one and hardly rise to the dignity of patentable invention. The water receptacle at one side is old, in any event. Would it have been invention to substitute an oblong brush and water compartment in the center so as to admit a wider brush?

It is also claimed that the large broad cover enables the user to save time and trouble in putting it in place, as the brush may be dropped in at almost any angle, and no time is required to adjust it to the elevation in the cover. But this construction is old. By elevating the cover above the surface of the water and paste, the vapor rising from the water reaches the surface of the paste, and undoubtedly, being confined, assimilates therewith somewhat, and tends to keep it moist. Precisely this result would have been obtained by increasing the height of the cover in the Redington structure. Would that change of construction have constituted a patentable improvement, in view of the prior art, to which attention has been called? And is there anything new or novel in so arranging a receptacle containing paste and water in adjoining compartments that the moisture produced by the evaporation of the one will moisten the other? It is common knowledge, and has been for half a century at least, that the materials of which paste is composed will harden if deprived of moisture and soften if water is added, and that such materials absorb water whether it comes in the form of vapor or water. Any person with the Redington patent

before him, who has any knowledge of the composition of paste or mucilage—and every user knows it becomes nonusable if exposed to the air for a long time because of the evaporation of the water, and is restored to usefulness by the addition of water or any kind of moisture in sufficient quantities—would readily see that if the top was not made air-tight the paste would dry up if not frequently moistened, and that if the cover was elevated ever so little above the upper edge of the partition the vapor arising from the water would tend to keep the paste moist if confined by a substantially air-tight and water-tight cover. Any such observer would also readily see that by elevating the whole cover to the height of the brush handle when standing erect in the cup or pot it would the more readily be placed over the brush. Any such observer would also see that by changing the water and brush compartment from the center to the side a wider brush could be used if the compartment were made large enough, and that in turning the cup or jar up sidewise to empty out the water no part of the contents would run into or upon the paste, provided the pot or jar were turned the right way.

But is it patentable invention to so change the construction of such a pot or jar as to bring about results well known to all, easily understood, and which are the natural and inevitable results of the changes of construction? The Redington construction has its advantages, and by many would be considered superior to the complainant's construction. It occupies less space. As the cover shuts tight above the water and paste, the pot or cup may be turned up sidewise or bottom side up without slopping the water over the paste, and clearly in the Redington construction the brush will retain its proper place, and not be rattling around in a large vacant chamber. Again, as the cover screws on and is supposed to be substantially air and water tight, the paste is kept moist, as drying up by evaporation is prevented.

It seems clear to this court that in complainant's patent we find an aggregation of old devices—a combination of old devices, we may say—each performing its old function, or one of its old functions, and working out its old effect without producing anything novel as a result of the combination, and that such aggregation or combination was not patentable. Adams v. Bellaire Stamping Co., 141 U. S. 539–542, 12 Sup. Ct. 66, 35 L. Ed. 849; Florsheim v. Schilling, 137 U. S. 64–77, 11 Sup. Ct. 20, 34 L. Ed. 574; Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; Hailes v. Van Wormer, 20 Wall. 353–368, 22 L. Ed. 241; J. L. Mott Ironworks v. Hoffman & Billings Mfg. Co., 56 C. C. A. 151, 120 Fed. 1019; Burt v. Evory, 133 U. S. 349–358, 10 Sup. Ct. 394, 33 L. Ed. 647.

In Pickering v. McCullough, supra, the court held:

"(2) A combination of old elements is not patentable unless they all so enter into it as that each qualifies every other. It must either form a new machine of distinct character and function, or produce a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements."

In Florsheim v. Schilling, supra, the court held:

"A new arrangement or grouping of parts or elements of a patented article, which is the mere result of mechanical judgment, and the natural outgrowth

of mechanical skill, is not invention. The combination of old devices into a new article, without producing any new mode of operation, is not invention."

At page 77, 137 U. S., page 25, 11 Sup. Ct., 34 L. Ed. 574, citing many authorities, the court said:

"The combination of old devices into a new article, without producing any new mode of operation, is not invention."

In Adams v. Bellaire Stamping Co., 141 U. S. 539, 12 Sup. Ct. 66, 35 L. Ed. 849, the court held:

"The alleged invention protected by letters patent No. 50,591, granted October 24, 1865, to John H. Irwin, was a combination of old devices, each performing its old function and working out its own effect, without producing anything novel as the result of the combination, and was not patentable."

And at page 542, 141 U. S., page 67, 12 Sup. Ct., 35 L. Ed. 849, the court said:

"We do not perceive that in the rulings of the court any substantial error was committed. The elements combined to form the alleged invention merely constituted an aggregation of old devices, each working out its own effect, without producing anything novel, and such an assemblage or bringing together of old devices, without securing some new and useful result as the joint product of the combination—something more than a mere aggregation of old results—does not constitute a patentable invention. Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241; Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749."

In Burt v. Evory, supra, the court said:

"It is well settled that not every improvement in an article is patentable. The test is that the improvement must be the product of an original conception. Pearce v. Mulford, 102 U. S. 112, 118, 26 L. Ed. 93; Slawson v. Grand Street Railroad, 107 U. S. 649, 27 L. Ed. 576; Munson v. New York City, 124 U. S. 601, 8 Sup. Ct. 622, 31 L. Ed. 586; and many other cases. And a mere carrying forward or more extended application of an original idea—a mere improvement in degree—is not invention. In Smith v. Nichols, 21 Wall. 112, 118, 119, 22 L. Ed. 566, Mr. Justice Strong, delivering the opinion of the court, said: 'A patentable invention is a mental result. It must be new, and shown to be of practical utility. Everything within the domain of the conception belongs to him who conceived it. The machine, process, or product is but its material reflex and embodiment. A new idea may be ingrafted upon an old invention, be distinct from the conception which preceded it, and be an improvement. In such case it is patentable. The prior patentee cannot use it without the consent of the improver, and the latter cannot use the original invention without the consent of the former. But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means, with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case, everything belongs to the prior patentee; in the other, to the public at large.' Neither is it invention to combine old devices into a new article without producing any new mode of operation. Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866; Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Hall v. Macneale, 107 U. S. 90, 2 Sup. Ct. 73, 27 L. Ed. 367. In the recent case of Hill v. Wooster, decided January 13th of this year (132 U. S. 693, 700, 10 Sup. Ct. 228, 231, 33 L. Ed. 502), it is said: 'This court, however, has repeatedly held that, under the Constitution and the acts of Congress, a person, to be entitled to a patent, must have invented or discovered some new and useful art, ma-

chine, manufacture, or composition of matter, or some new and useful improvement thereof, and that it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the Constitution and the statute, amount to an invention or discovery'—citing a long list of authorities."

In short, this court is unable to find invention in placing a dish of paste and a dish of water side by side under the same cover, so as to enable the evaporation of the water to moisten the paste. The mode of operation and the result are both old. The complainant's patent is void.

The bill of complaint must be dismissed, with costs. So ordered.